**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FOSHAN HUAYUN TECHNOLOGY CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>SCHEDULE A DEFENDANTS,<br><br>Defendants. | Civil Action No. 2:26-cv-01521-CCW<br><br>Judge Christy Criswell Wiegand |

**DEFENDANT NO. 1 ZHENJIANGJIANHONGMAOYIYOUXIANGONGSI'S (D/B/A "COCKTAP") OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION (DKT. 16) FOR ENTRY OF TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER, AND ORDER TO SHOW CAUSE[1]**

[1] Cocktap has not been served with process in this action. It appears for the limited purpose of opposing the extraordinary relief Plaintiff seeks against it and expressly reserves, without waiver, all defenses available under Federal Rule of Civil Procedure 12, including lack of personal jurisdiction, insufficient service of process, as well as all objections to joinder under Rules 20 and 21. Nothing in this brief constitutes a general appearance, a waiver of service, or consent to the jurisdiction of this Court.

## Table of Contents

*I. BACKGROUND ........ 1*

*a. Cocktap Is An Established, Fully Identified Amazon Seller. ........ 1*

*b. The Bath And Shower Fixtures Field Is Crowded With Prior Art Designs. ........ 1*

*II. LEGAL STANDARD FOR TRO/PRELIMINARY INJUNCTION ........ 2*

*III. ARGUMENT ........ 4*

*a. Plaintiff Cannot Show A Likelihood Of Success On The Merits. ........ 4*

*i. Plaintiff lacks standing to sue because its own declarant swears that he, not Plaintiff, owns the asserted patent. ........ 4*

*ii. Even if Plaintiff owns the asserted patent, substantial questions of enforceability and validity defeat any likelihood of success. ........ 5*

*1. The asserted patent is unenforceable due to inequitable conduct involving false inventorship. ........ 5*

*2. The claimed design was in public use, on sale, or otherwise available to the public before the effective filing date. ........ 6*

*3. Cocktap joins co-defendant Woindo's prior-art, functionality, and ordinary-observer contentions. ........ 8*

*iii. Even if Plaintiff owns the asserted patent, Plaintiff has failed to carry its burden of proving that Cocktap infringes. ........ 10*

*1. Plaintiff relies on a single figure and ignores seven of the eight views that define the claimed design. ........ 10*

*2. The ordinary observer test must be done in light of the prior art. ........ 10*

*b. Plaintiff Has Failed To Establish Any Irreparable Harm. ........ 11*

*i. Plaintiff has not identified its own product, storefront, or sales. ........ 12*

*ii. Plaintiff offered no evidence of any actual injury. ........ 12*

*iii. Plaintiff's motion and DENG's declaration contradict each other on licensing. ........ 14*

*iv. Plaintiff's own substantial delay refutes any irreparable injury. ........ 15*

*c. The Balance Of Equities And The Public Interest Favor Denial. ........ 16*

*d. Expedited Discovery Should Be Denied As To Cocktap. ........ 16*

*e. The Asset Restraint Should Be Denied, Or In The Event Injunctive Relief Is Granted, Should Not Exceed Cocktap's Profits From Post-Notice Sales. ........ 17*

*i. Cocktap is not a flight risk. ........ 17*

*ii. Plaintiff's failure to comply with the patent marking requirement under 35 U.S.C. § 287(a) bars any pre-notice damages.* ........ *18*

*f. Rule 65(C) Requires An Adequate Bond If An Injunction Is To Be Entered Against Cocktap.* ........ *21*

*IV. CONCLUSION* ........ *21*

## I. BACKGROUND

### a. Cocktap Is An Established, Fully Identified Amazon Seller.

Plaintiff's Schedule A identifies Cocktap as Defendant No. 1 and accuses nine Cocktap ASINs of infringement. Dkt. 15-7 at p. 1. Cocktap (Amazon Seller ID A10PKJTUSSO0U1) is the d/b/a name of Zhenjiangjianhongmaoyiyouxiangongsi's Amazon.com storefront. It has sold bath and shower fixtures in the United States for over 7 years and maintains a substantial sales history and excellent customer-review record on the platform. Xu Decl. at ¶¶ 3-4, 9.

In compliance with Amazon's policy requiring third-party sellers to disclose their business identity, Cocktap's seller information page publicly identifies its legal entity name, business address, and email address cocktap@163.com. *Id.* at ¶¶ 6-8. Anyone viewing an accused product listing can reach that page in two clicks: "Sold by cocktap," then "Learn more about the seller." Plaintiff and its counsel could have done so at any time. *Id.* at ¶ 33.

Plaintiff's counsel nevertheless declared categorically that "Defendants have provided *no means* by which they may be identified or contacted beyond their Amazon.com and other Marketplace Account names." Dkt. 16-3 at ¶ 9 (emphasis added). That statement is false as to Cocktap. Nor does the record support treating Cocktap as part of "an organized group of infringers." *Id.* at ¶ 10. Instead, it is a legitimate and successful business that has retained counsel, proactively identified itself, moved to intervene before service, negotiated a briefing schedule, and is defending on the merits.

### b. The Bath And Shower Fixtures Field Is Crowded With Prior Art Designs.

The scope of a design patent is measured against the prior art. The asserted patent sits in a crowded field. Shower valves using a rectangular plate, round controls, and a lever handle are known in the art. In addition to the references cited on the face of the asserted patent and considered

by the examiner, various other designs similar to the claimed design have also been available to the public before the filing date of the asserted patent. *See* XU Decl. at ¶¶ 6, 10-26; Dkts. 41-1 to 41-4.

## II. LEGAL STANDARD FOR TRO/PRELIMINARY INJUNCTION

A temporary restraining order, like a preliminary injunction, is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The movant must establish (1) a reasonable probability of success on the merits, (2) that it will suffer irreparable harm absent relief, (3) that the balance of equities favors relief, and (4) that relief is in the public interest. *Id.* at 20.

At the TRO/preliminary-injunction stage, a patentee cannot show a likelihood of success if the accused infringer raises a "substantial question" of invalidity or unenforceability that the patentee fails to show "lacks substantial merit." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377, 1378-79 (Fed. Cir. 2009); *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1358 (Fed. Cir. 2001)("Validity challenges during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial.").

"In resisting a preliminary injunction, however, one need not make out a case of actual invalidity. Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Amazon.com*, 239 F.3d at 1359. Once a substantial question is raised, it is Plaintiff "who must persuade the court that, despite the challenge presented to validity, [it] nevertheless is likely to succeed at trial on the validity issue." *Titan Tire*, 566 F.3d at 1377.

Similarly, "[i]f [the defendant] raises a substantial question concerning . . . infringement . . . , *i.e.*, asserts an infringement . . . defense that the patentee cannot prove 'lacks

substantial merit,' the preliminary injunction should not issue." *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022)(vacating the district court's grant of preliminary injunction in a Schedule A design-patent action); *see also Ridge Corp. v. Kirk NationaLease Co.*, 181 F.4th 1224, 1233 (Fed. Cir. 2026)(reversing the district court's grant of preliminary injunction).

To show infringement of a design patent, Plaintiff must demonstrate that "an ordinary observer, *familiar with the prior art designs*, would be deceived into believing that the accused product is the same as the patented design." *ABC Corp. I*, 52 F.4th at 941 (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008)("When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art.")). Notably, "when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 676.

Additionally, "there is no presumption of irreparable harm upon a finding of patent infringement." *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013)(citing *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011)). Moreover, "speculative harm does not justify the rare and extraordinary relief of a preliminary injunction." *Ridge Corp.*, 181 F.4th at 1234 (quoting *Philips N.V. v. Thales Dis Ais USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022)).

## III. ARGUMENT

### a. Plaintiff Cannot Show A Likelihood Of Success On The Merits.

#### i. Plaintiff lacks standing to sue because its own declarant swears that he, not Plaintiff, owns the asserted patent.

Only a "patentee" may bring a civil action for patent infringement. 35 U.S.C. § 281. Plaintiff must show that it possessed enforceable exclusionary rights when it filed suit. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019)("The term patentee includes the original patentee (whether the inventor or original assignee) and 'successors in title.' But it does not include mere licensees."). Ownership is Plaintiff's to prove, and at the TRO/preliminary injunction stage, it is the threshold element of any likelihood of success. *See Lone Star*, 925 F.3d at 1229-34.

The asserted patent identifies Foshan Huayun Technology Co., Ltd. as the applicant and assignee, and Yunshi Deng ("DENG") as the inventor. Dkt. 15-1. Yet DENG's July 16, 2026 declaration filed in support of Plaintiff's motion, which was made under the penalty of perjury and long after the asserted patent was issued, states: "I *am* the inventor *and owner* of U.S. patent registration number US D1,057,101 S." Dkt. 16-2 at ¶ 2 (emphasis added); *see also* Dkt. 45 at ¶ 1.

In other words, Plaintiff's own evidence shows that DENG, rather than Plaintiff, owns the asserted patent. Plaintiff has produced no assignment, no license, and no other written instrument establishing that it holds any interest in the asserted patent. Thus, Plaintiff lacks standing to sue, its motion should be denied on this ground alone, and this action should be dismissed with prejudice.

**ii. Even if Plaintiff owns the asserted patent, substantial questions of enforceability and validity defeat any likelihood of success.**

**1. The asserted patent is unenforceable due to inequitable conduct involving false inventorship.**

An applicant must name all joint inventors and must submit an oath or declaration attesting to correct inventorship. 35 U.S.C. §§ 115, 116; 37 C.F.R. § 1.63. A patent procured through the knowing and deliberate misnaming of inventorship is unenforceable. *See PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321–23 (Fed. Cir. 2000).

The asserted patent names DENG as the *sole* inventor. Dkt. 15-1. Yet, DENG's declarations concedes that he is only "*one of* the inventors" of the claimed design, and describes the development effort in the collective: "*We* put large efforts into developing the invention described in the '101 Patent in 2024 . . . ." Dkt. 16-2 at ¶¶ 2–3 (emphasis added); *see also* Dkt. 45 at ¶ 1.

By intentionally omitting the other co-inventors from the application, Plaintiff (and DENG) knowingly made material misrepresentations to the USPTO regarding the true inventorship of the asserted design. They did so with the deceptive intent to cause the USPTO to issue the patent in the name of DENG alone, who is a minority owner of Plaintiff. The asserted patent is rendered unenforceable by such inequitable conduct. *See Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 828 (Fed. Cir. 2010)("[W]hen named inventors deliberately conceal a true inventor's involvement, the applicants have committed inequitable conduct and the patent is unenforceable even as to an innocent co-inventor.").

To deny Plaintiff's motion at this stage, the Court need only find that Plaintiff has not shown the defense "lacks substantial merit." *Titan Tire*, 566 F.3d at 1379; *see also GeigTech East Bay LLC v. Lutron Elecs. Co.*, No. 20-cv-10195, 2021 U.S. Dist. LEXIS 152133, *24-28 (S.D.N.Y.

Aug. 12, 2021)(denying preliminary injunction because the plaintiff failed to rebut the defendant's inequitable conduct defense based on alleged incorrect inventorship). Plaintiff plainly cannot make that showing on a record in which its own declarant contradicts the face of the asserted patent.

**2. The claimed design was in public use, on sale, or otherwise available to the public before the effective filing date.**

A design is unpatentable if it was "in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1); *see id.* § 171(b). The effective filing date of the asserted patent is October 21, 2024. Dkt. 15-1.

For the on-sale bar to apply, before the critical date, "(1) the claimed invention must be the subject of a commercial offer for sale; and (2) the invention must be ready for patenting." *Hamilton Beach Brands, Inc. v. Sunbeam Prods.*, 726 F.3d 1370, 1374 (Fed. Cir. 2013)(citing *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998)). "An offer to sell is sufficient to raise the on-sale bar, regardless of whether that sale is ever consummated." *Merck & Cie v. Watson Labs., Inc.*, 822 F.3d 1347, 1352 (Fed. Cir. 2016).

"The public-use bar is triggered 'where, before the critical date, the invention is [(1)] in public use and [(2)] ready for patenting.'" *Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371, 1377 (Fed. Cir. 2023). "The 'in public use' element of the bar is met if the invention 'was accessible to the public or was commercially exploited' by the inventor." *Id.*

An active Amazon listing satisfies the offer-for-sale prong on its own terms because, once a product is listed on Amazon, members of the public may form a binding contract of sale by placing an order. *See Hamilton Beach*, 726 F.3d at 1377 (a commercial offer for sale is "one which the other party could make into a binding contract by simple acceptance"). Published customer reviews of that listing establish, in turn, that the product was shown to and used by persons other than the inventor without any obligation of confidentiality, *i.e.*, public use. *Minerva Surgical*, 59

F.4th at 1377 ("An invention is in public use if it is shown to or used by an individual other than the inventor under no limitation, restriction, or obligation of confidentiality.").

A published consumer review also demonstrates that the product worked for its intended purpose, thus satisfying the "ready for patenting" prong under both the on-sale bar and public use bar. *See Hamilton Beach*, 726 F.3d at 1377-80; *see also Art+Com Innovationpool GmbH v. Google LLC*, 712 F. App'x 976, 984 (Fed. Cir. 2017)("Under this court's precedent, an 'invention is reduced to practice when it works for its intended purpose'—that is, 'when there is a demonstration of its workability or utility.'").

A patentee's own accusation that a product embodies the claimed design is an admission that the accused product is invalidating prior art if it pre-dates the effective filing date of the asserted patent. *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000)("Although [the defendants] bore the burden of proving that the [accused products] that were the subject of the pre-critical date sales anticipated the [asserted] patent, that burden was satisfied by [the plaintiff's] allegation that the accused [products] infringe the [asserted] patent."); *Upsher-Smith Labs. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005)("[A] product 'which would literally infringe if later in time anticipates if earlier.'"); *accord Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)("That which infringes, if later, would anticipate, if earlier.").

Plaintiff has told this Court that the products sold under the accused ASINs in this action embody the claimed design. *See* Dkt. 15-7. Thus, if any one of those products was available to the public before October 21, 2024, such product would invalidate the asserted patent. *See, e.g.*, *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 716 (D. Del. 2011)("An admission by the patentee that a particular product practices the claimed invention is sufficient to satisfy the defendant's burden that the product anticipates the claim for purpose of applying the on sale bar

and public use bar."); *accord Gammino v. Sprint Commc'ns Co. L.P.*, No. 10-2493, 2011 U.S. Dist. LEXIS 83459, at *20–22 (E.D. Pa. July 28, 2011)("[A] patentee's accusations of infringement can serve as a binding admission that satisfies the accused infringer's evidentiary burden to show invalidity, and may excuse the court from performing an element-by-element comparison of the claim to the prior art item in question."); *Nextec Applications v. Brookwood Cos.*, 703 F. Supp. 2d 390, 422 (S.D.N.Y. 2010)("When the item alleged by one party to be anticipating prior art is the exact same item that the other party contends infringes, the party seeking to prove invalidity by anticipation can establish invalidity without actually performing an element by element comparison of the claim to the prior art item in question.").

Defendant No. 2 Woindo submitted evidence that at least one of its accused products—ASIN B0D5XXTP27—was offered for sale and in public use no later than August 26, 2024. Dkt. 41 at pp. 6–7; *see also* XU Decl. at ¶ 13. Further review of Woindo's accused listings shows that several additional products accused by Plaintiff, such as ASINs B0D5XWNJGS, B0D5XXDY2H, and B0D5XPR2PC, were likewise offered for sale and in public use before the effective filing date of the asserted patent. XU Decl. at ¶¶ 12-17. Each of these accused products invalidates the asserted patent. *See Vanmoor*, 201 F.3d at 1366 (affirming summary judgment that the asserted patent was anticipated (thus invalidated) by the pre-critical date sales of the accused products).

**3. Cocktap joins co-defendant Woindo's prior-art, functionality, and ordinary-observer contentions.**

To avoid burdening the Court with duplicative briefing, Cocktap joins the following contentions from co-defendant Woindo's Amended Opposition (Dkt. 41 at 3–11): (i) that the four prior art references (CN 304032638 S, CN 306922838 S, CN 306922841 S, and EU Registered Design 006263299-0043) disclose, years before the asserted patent's effective filing date, the rectangular wall plate, the cluster of circular function controls, and the lower lever/handle that

together constitute the overall visual impression Plaintiff claims; (ii) that the claimed appearance is dictated by the function of a concealed mixing valve and is therefore not ornamental; and (iii) that an ordinary observer familiar with the prior art would not regard the claimed design as a new design. *See also* XU Decl. at ¶¶ 18-31.

Notably, DENG's declaration that "We put large efforts into developing the invention described in the '101 Patent in 2024 *to overcome the deficiencies of those conventional Shower Valve*," Dkt. 16-2 at ¶ 3 (emphasis added), buttresses defendants' contention that the claimed design is dictated by function and not ornamental.

In sum, defendants have raised substantial questions of enforceability and validity concerning the asserted patent. District courts confronting this same posture—a Schedule A plaintiff seeking preliminary injunctive relief on a design patent, met with a substantial challenge to that patent's validity—regularly decline to grant it. *See, e.g., Xianfeng Wang v. P'ships*, No. 8:23-cv-2787-VMC-AAS, 2024 U.S. Dist. LEXIS 111767, at *5–7 (M.D. Fla. June 25, 2024)(recommending denial of preliminary injunction in view of on-sale bar defense), *adopted by* 2024 U.S. Dist. LEXIS 130370 (M.D. Fla. July 24, 2024); *Feng Gao v. P'ship & Unincorporated Ass'n Identified on Schedule "A"*, No. 21-cv-4055, 2022 U.S. Dist. LEXIS 64451, at *9 (N.D. Ill. Apr. 4, 2022)(denying preliminary injunction on three design patents in view of the defendant's validity challenge, and noting that "at the preliminary injunction stage . . . the trial court does not resolve the validity question, but only makes an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial"); *Baoying Zhao v. Individuals*, No. 21-cv-62264-WPD, 2021 U.S. Dist. LEXIS 263922, at *2–4 (S.D. Fla. Dec. 6, 2021)(denying preliminary injunction on one design patent and dissolving the temporary restraining order in view of the defendant's validity challenge).

**iii. Even if Plaintiff owns the asserted patent, Plaintiff has failed to carry its burden of proving that Cocktap infringes.**

**1. Plaintiff relies on a single figure and ignores seven of the eight views that define the claimed design.**

The claim of a design patent is the design "as shown and described" in *all* of its figures; the drawings *collectively* define the claim. The asserted patent contains eight figures showing eight different views and its description expressly enumerates each. Dkt. 15-1.

Plaintiff's infringement assertion against Cocktap relies exclusively on FIG. 1. *See* Dkt. 15-3; Dkt. 17 at p. 2. Plaintiff never addresses FIG. 2 (rear, left and bottom perspective view), FIG. 3 (front view), FIG. 4 (rear view), FIGS. 5 and 6 (side views showing the port configuration and body profile), FIG. 7 (top plan), or FIG. 8 (bottom plan). Those views depict substantial portions of the claimed design: the valve body, the port geometry, the mounting features, and the depth and profile of the assembly. A comparison of two front-quarter photographs reaches none of them. A patentee seeking to enjoin a competitor must compare the accused article to the design the patent actually claims, from *every view* the patent claims it. Selecting the one figure most favorable to the patentee and ignoring the rest is not a proper infringement analysis. Such a selective showing cannot carry Plaintiff's heavy burden of proof on its motion.

**2. The ordinary observer test must be done in light of the prior art.**

Design patent infringement is judged from the perspective of an ordinary observer "giving such attention as a purchaser usually gives," and comparison must be conducted "in light of the prior art." *Egyptian Goddess*, 543 F.3d at 671, 675–78. Where the accused design and the claimed design share only features that the prior art already discloses, there is no infringement. *See id.* at 678 ("Where there are many examples of similar prior art designs, as in a case such as *Whitman Saddle*, differences between the claimed and accused designs that might not be noticeable in the

abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.”). In addition, purely functional elements are discounted from the comparison entirely. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010)(“[W]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.”).

Plaintiff’s motion does not discuss any prior art, does not identify which features it contends are ornamental rather than functional, and does not conduct a three-way comparison. It merely asserts that the accused products are “virtually identical” to the claimed design. Dkt. 17 at pp. 11–12. That is not the test. Rather, viewing the claimed design in light of the prior art references currently in the record, an ordinary observer would recognize that Cocktap’s accused products are plainly dissimilar to Plaintiff’s claimed design. XU Decl. at ¶¶ 32-37.

**b. Plaintiff Has Failed To Establish Any Irreparable Harm.**

Irreparable harm must be proved, not presumed. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006); *Apple*, 735 F.3d at 1359. Moreover, the Federal Circuit has cautioned that “a district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff.” *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575 (Fed. Cir. 1990).

That caution is particularly warranted here: Plaintiff’s entire showing is a single, uncorroborated declaration from an individual (i.e., DENG) with a direct financial interest in the outcome. *See, e.g.*, *Jacki Easlick, LLC v. CJ Emerald*, No. 2:23-cv-2000, 2024 U.S. Dist. LEXIS 14421, at *4 (W.D. Pa. Jan. 26, 2024) (the weight given to affidavits at this stage “vary[ies] greatly depending on the facts and circumstances of a given case,” and a district court “retains sound discretion to deny injunctive relief based on credibility determinations”); *id.* at *20–21 (movant

must clearly show "a likelihood of substantial and immediate irreparable injury," and "conclusory statements and theoretical arguments" are not enough). This Court has ample reason to discount DENG's declaration.

**i. Plaintiff has not identified its own product, storefront, or sales.**

Plaintiff asserts that it "started to launch the products and received great commercial success in the United States," and that "[o]ur Amazon Marketplace is the primary sales point." Dkt. 17 at p. 9; Dkt. 16-2 at ¶¶ 4–5; Dkt. 15 at ¶¶ 9–10. Yet neither Plaintiff's motion nor DENG's declaration identifies a single product Plaintiff sells that practices the asserted patent, a single ASIN, or even the name of the Amazon storefront Plaintiff calls its "primary sales point." These are facts entirely within Plaintiff's possession. Their absence is telling. A patentee that cannot identify its own patented product cannot show that a competitor's sales are eroding its unspecified product's market.

**ii. Plaintiff offered no evidence of any actual injury.**

DENG declares that "[w]e have invested significant time, money, and manpower into the promotion of the '101 Patent-protected products, including advertising, promotions, and online publications," and estimates "the cost of developing and promoting the invention was around $2,200,000 in 2024." Dkt. 16-2 at ¶ 3. Plaintiff produced no invoice, no advertising contract, no accounting record, and no publication—nothing. A figure asserted without support is not evidence of anything, least of all any purported irreparable injury.

Plaintiff further asserts "loss of market share, reputation, exclusivity, and an inability to realize a return on investment." Dkt. 17 at pp. 13-14; *accord* Dkt. 16-2 at ¶¶ 9–11. It offers no sales figures, no market-share data, no evidence of price erosion, no lost customer, and no evidence of reputational injury. Merely reciting the legal categories of irreparable harm is not proof of

irreparable harm. *See Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349-50 (Fed. Cir. 2020)(holding that "a bare assertion of irreparable harm is never sufficient to prove such harm or justify the 'extraordinary remedy' of a preliminary injunction" and that a plaintiff must "articulate and adduce proof of actual or imminent harm which cannot otherwise be compensated by money damages" rather than rely on "nonspecific and unsupported assertion that [the defendant's] sales 'likely will cause' irreparable harm"); *Jacki Easlick*, 2024 U.S. Dist. LEXIS 14421 at *20-25 (denying preliminary injunction after finding that the plaintiff asserting a design patent failed to introduce "concrete evidence" to support its assertion of irreparable harm).

"[T]he patentee's right to exclude alone cannot justify an injunction." *Robert Bosch*, 659 F.3d at 1149. "[L]ost sales standing alone are insufficient to prove irreparable harm; if they were, irreparable harm would be found in every case involving a manufacturer/patentee, regardless of circumstances." *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 300–01 (Fed. Cir. 2009). "[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial." *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991).

And on this record Plaintiff has "offered no evidence that would show the extent of the[] competition and allow the Court to make a finding of whether irreparable harm is likely to occur or that monetary damages are inadequate." *Jacki Easlick*, 2024 U.S. Dist. LEXIS 14421 at *23–24; *see also id.* at *22–23 (no evidence the accused products are "constructed with sub-quality materials or that consumers confuse them"); *id.* at *24 (price erosion shown by nothing "more than conclusory statements").

Nor does Plaintiff establish any causal nexus between Cocktap's accused listings and the harm it asserts: it never explains why the alleged infringement *by Cocktap*, as opposed to

competition from other sellers in the market generally, is what injures it. *See Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020)(holding that to prove irreparable injury, a patentee must show "a sufficiently strong causal nexus relates the alleged harm to the alleged infringement"); *Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*, No. 21 Civ. 2169, 2022 U.S. Dist. LEXIS 151456, *19-20 (S.D.N.Y. Aug. 23, 2022)(finding no irreparable harm "where the Plaintiffs have not shown a limited number of suppliers or that the relevant market of shower curtains is a small or niche market").

**iii. Plaintiff's motion and DENG's declaration contradict each other on licensing.**

DENG declares under the penalty of perjury that: "Neither me or my company licensed the '101 Patent to any parties for their use." Dkt. 16-2 at ¶ 8. Plaintiff's memorandum, filed the same day, argues that Defendants' conduct "deters any reputable third-party license and diminishes Plaintiff's *current licensee's* rights." Dkt. 17 at pp. 13–14 (emphasis added). Both cannot be true, and either answer defeats its motion.

If DENG's declaration is accurate and no license exists, then Plaintiff and its counsel breached their Rule 11 obligation by asserting a licensee that does not exist. *Cf. Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 847 (N.D. Ill. 2023)(sanctioning a Schedule A plaintiff for presenting "false, erroneous, or legally frivolous statements and arguments").

If, however, the memorandum is accurate and Plaintiff has licensed the asserted patent, then DENG committed perjury and his declaration has little probative value. In such an instance, Plaintiff itself also shows that money is adequate compensation because "by its grant of licenses, [a patentee] acts incompatible with the emphasis on the right to exclude." *T.J. Smith & Nephew Ltd. v. Consolidated Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987); *see also Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 682–83 (Fed. Cir. 1990)(where a patent holder "has

licensed its patent to another, monetary damages can sufficiently compensate the patent holder"); *Xiangshan Zhang v. Vivosun Inc.*, No. ED CV22-01947 JAK (RAOx), 2023 U.S. Dist. LEXIS 157175, at *14 (C.D. Cal. July 10, 2023)(finding that the plaintiff's patent license to other companies "suggests that, even if Defendant's activity is infringing, monetary damages may be sufficient to compensate Plaintiff for his losses").

A licensee would also be a competing source of the same patented design. Plaintiff has never explained why Cocktap's listings, rather than its own licensee's sales or the market generally, are what cause its alleged injuries. Again, that failure defeats the required "causal nexus." *See Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015)("The causal nexus requirement ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant's wrongful conduct, *not some other reason*.")(emphasis added).

**iv. Plaintiff's own substantial delay refutes any irreparable injury.**

The asserted patent issued on January 7, 2025. Each of Cocktap's accused listings has been listed on Amazon for months. XU Decl. at ¶ 32. Yet, Plaintiff did not file suit until July 17, 2026—more than eighteen months later—and waited a further two weeks to seek *ex parte* injunctive relief. Despite such extended delay, Plaintiff made little effort to establish either infringement or any irreparable injuries, relying mainly on a conclusory declaration from an interested witness. A party that waits eighteen months to sue cannot credibly claim that it will suffer immediate and irreparable injury if injunctive relief is not granted.

In sum, Plaintiff has failed to establish any irreparable harm. Any purported injuries suffered by Plaintiff, to the extent caused by Cocktap's accused conduct, are calculable to the penny from sales and financial records that already exist and that will be produced in the ordinary course of discovery.

**c. The Balance Of Equities And The Public Interest Favor Denial.**

The relief Plaintiff seeks would suspend Cocktap's accused listings, freeze all funds in its Amazon and payment accounts without limit, and sequester its inventory before any final adjudication of validity or infringement. "The hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating." *Illinois Tool Works*, 906 F.2d at 683–84. Against that, Plaintiff faces at most the delay of a money judgment on a design patent that is subject to substantial invalidity and unenforceability questions and that Plaintiff's own declarant says it does not own. The equities are not close.

It is Plaintiff, not Cocktap, that bears the burden on this factor. *Wang*, 2024 U.S. Dist. LEXIS 111767 at *9 ("[T]he party moving for a preliminary injunction bears the burden of showing that the balance of equities tips in its favor."). Plaintiff has not attempted to carry it as to Cocktap specifically. As another district court observed in a similar Schedule A context, "[w]hile [the plaintiff's] harm is speculative, the defendants and other affected non-parties would suffer great harm if the requested preliminary injunction was entered." *Id.*

The public interest likewise favors denial. Although there is "a strong public interest in enforcing patent rights," "[t]he public generally has a right to open and fair marketplace competition," and "suffers when consumers are deprived of their choice of product." *Id.* at *10. The public has no interest in enforcing a patent of doubtful validity, and none in permitting a patentee to clear a marketplace of competitors on a record that its own evidence contradicts.

**d. Expedited Discovery Should Be Denied As To Cocktap.**

Expedited discovery requires good cause. The only good cause Plaintiff offered was that "the Defendants are located overseas and have gone to great lengths to conceal their identities and avoid detection," such that a restraining order "would be of little value if the Plaintiff is unable to

discover the Defendants' bank accounts, identity, and email." Dkt. 17 at p. 16. That rationale has no application to Cocktap. Cocktap's identity, entity name, email, and business address are public; it has appeared through counsel; and it is diligently defending this action. There is nothing to discover about its identity and no risk that it will vanish.

The order Plaintiff proposed is also entirely one-sided: it compels sworn interrogatory responses and document production on an expedited timeline while imposing no reciprocal obligation on Plaintiff and permitting no discovery by Cocktap. Dkt. 16 at pp. 14-16. Now that Cocktap has appeared, discovery should proceed on a mutual basis, in the ordinary sequence, following a Rule 26(f) conference. Fed. R. Civ. P. 26(d).

**e. The Asset Restraint Should Be Denied, Or In The Event Injunctive Relief Is Granted, Should Not Exceed Cocktap's Profits From Post-Notice Sales.**

Because Plaintiff has failed to carry its heavy burden of proof for preliminary injunctive relief, its request for pre-judgment asset restraint should also be denied. Independently, to the extent Plaintiff seeks to secure a judgment for money damages under 35 U.S.C. § 284, this Court has no authority to restrain assets at all because such relief is legal, rather than equitable, in nature. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999); *See* Ex. 1[2] at pp. 3-4 (holding that a money judgment pursuant to Section 284 cannot form the basis of prejudgment asset restraint). In all events, if the Court is inclined to grant an injunction, the asset restraint should still be denied or at least narrowly tailored.

**i. Cocktap is not a flight risk.**

A "generalized concern" that a future judgment may be difficult to collect "is inadequate to support the broad asset freeze." *Wang*, 2024 U.S. Dist. LEXIS 111767 at *8. A generalized

[2] Exhibit 1 is a true and correct copy of *CAO Group Inc. v. Individuals*, No. 24-cv-1211, Dkt. 67 (Slip Op.)(N.D. Ill. May 20, 2024).

concern is all Plaintiff currently asserts: "unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts." Dkt. 17 at p. 19; *see also* Dkt. 16-3 at ¶ 4. Such "sweeping statements about the practices of foreign corporations . . . are unsupported by evidence and, more importantly, do not speak to the question of whether [this defendant] . . . whose liability for [infringement] is merely alleged, not established, is likely to dissipate assets." *Spin Master v. Aciper*, No. 19-CV-6949, 2020 U.S. Dist. LEXIS 206278, *13-14 (S.D.N.Y. Nov. 4, 2020).

Cocktap is a successful business that has been in continuous operation for years and intends to maintain its operations during and after this litigation. XU Decl. at ¶¶ 4, 9, 39-43. Prejudgment asset restraint is not warranted against Cocktap, which is not a flight risk. *See LG Elecs., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule A*, No. 21 CV 2600, 2021 U.S. Dist. LEXIS 257615, at *9–12 (N.D. Ill. July 23, 2021)(denying asset restraint after finding that "the defendants are invested in these storefronts and in ongoing access to the American market"); *see also Eicher Motors Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 794 F. Supp. 3d 543 (N.D. Ill. 2025)(declining to freeze assets and observing that "an asset freeze that strangles defendants at the outset, thus rationally prompting them to settle involuntarily, is far from equitable and is inconsistent with *Grupo Mexicano*").

**ii. Plaintiff's failure to comply with the patent marking requirement under 35 U.S.C. § 287(a) bars any pre-notice damages.**

Even where *equitable monetary* relief (under 35 U.S.C. § 289) is theoretically available, the restraint must be narrowly tailored to it. *See, e.g.*, *Spin Master*, 2020 U.S. Dist. LEXIS 206278 at *9 ("Any asset freeze must be limited to an amount sufficient to preserve the equitable claim, and may not be used [to] 'preserve funds that may later be used to satisfy an award of statutory damages.'").

"The patentee bears the burden of *pleading* and proving he complied with § 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017)(emphasis added). "[T]he marking requirement, § 287(a), applies to design patents whether remedy for infringement is sought under § 284 or § 289." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).

Such a burden is imposed upon the patentee because "[w]hether a patentee's articles have been marked 'is a matter *peculiarly within his own knowledge*.'" *Arctic Cat*, 876 F.3d at 1366 (emphasis added). "If a patentee who makes, sells, offers for sale, or imports his patented articles has not 'given notice of his right' by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." *Id.*; *see also* 35 U.S.C. § 287(a)(noting the patentee's "failure so to mark" limits his damages to those incurred after actual notice).

Notably, a patentee's licensees must also comply with § 287, because the statute extends to "persons making or selling any patented article for or under [the patentee]." *Arctic Cat*, 876 F.3d at 1366 (citation omitted); *see also VDPP, LLC v. Volkswagen Grp. of Am., Inc.*, 2026 U.S. App. LEXIS 24976, *4 (Fed. Cir. Aug. 19, 2026)("Because VDPP sought pre-suit damages, VDPP had a burden to plead compliance with the notice provision of 35 U.S.C. § 287(a), including compliance by VDPP's licensees.").

Plaintiff's self-alleged sales of products practicing the asserted patent trigger its patent marking obligation. *See* Dkt. 16-2 at ¶¶ 2-5; Dkt. 17 at p. 9. Plaintiff's motion further asserts that it has a "current licensee," Dkt. 17 at pp. 14–15, who must also comply with the marking requirement. Neither the Complaint nor Plaintiff's motion contains a single allegation that Plaintiff or its purported licensee ever marked any product in any of the manners § 287(a) prescribes.

Nor did Plaintiff give any actual notice to Cocktap before August 12, 2026. "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *see also SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997)(notice must be given "with sufficient specificity"). Plaintiff filed the complaint under seal and did not provide the sealed materials to Cocktap until this Court ordered it to do so on August 12, 2026. *See* Dkts. 21, 23. Thus, Plaintiff did not provide actual notice of the alleged infringement to Cocktap until August 12, 2026.

As a result, Plaintiff is not entitled to any purported damages before August 12, 2026 even if it were to prevail at trial against Cocktap. *See, e.g.*, *Shenzhen Hengzechen Tech. Co. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 23-23380-Civ-Scola, 2024 U.S. Dist. LEXIS 21313, at *4–7 (S.D. Fla. Feb. 7, 2024)("[B]ecause the lawsuit was filed under seal until November 6, 2023, the Court dismisses Plaintiff's claim for damages prior to the unsealing of the lawsuit on November 6, 2023."); *see also Pipp Mobile Storage Sys. v. Innovative Growers Equip., Inc.*, No. 21 C 2104, 2022 U.S. Dist. LEXIS 8469, at *7-11 (N.D. Ill. Jan. 18, 2022)(dismissing claims for damages for patent infringement that occurred before plaintiff provided actual notice of infringement to defendant); *Blackbird Tech LLC v. Argento SC by Sicura, Inc.*, No. 21cv11018 (DLC), 2022 U.S. Dist. LEXIS 154230, at *3-6 (S.D.N.Y. Aug. 26, 2022)(dismissing claims for damages for infringement that occurred before actual notice provided by plaintiff and noting that "a single sentence asserting that '[a]ll marking requirements under 35 U.S.C. § 287 have been complied with'" is insufficient to plead compliance).

Because Plaintiff is not entitled to any pre-August 12, 2026 damages against Cocktap even if it were to ultimately prevail, it cannot obtain asset restraint based on Cocktap's sales of accused

products before that date. If any asset restraint were to be entered based on Cocktap's sales of any accused products after August 12, 2026, it must be narrowly tailored to the actual profits realized by Cocktap from those sales.

#### f. Rule 65(C) Requires An Adequate Bond If An Injunction Is To Be Entered Against Cocktap.

Rule 65(c) permits a restraining order or preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). An injunction to remove Cocktap's accused products and impose asset freeze would cause substantial harm to Cocktap. XU Decl. at ¶¶ 44-53. To the extent the Court is inclined to issue any injunctive relief over Cocktap's objection, Cocktap respectfully requests that Plaintiff be ordered to post additional security sufficient to cover Cocktap's reasonably foreseeable losses for the duration of the restraint, in an amount of not less than $100,000.

## IV. CONCLUSION

For the foregoing reasons, Cocktap respectfully requests that the Court deny Plaintiff's motion against Cocktap in its entirety, including the requested temporary restraining order, asset restraint, and expedited discovery, and decline to enter any preliminary injunction against Cocktap.

Respectfully submitted,

Dated: September 15, 2026

*/s/ Zheng Gong*
Zheng Gong
(admitted pro hac vice)
Primary Bar No.: IL 6323959
SHINYRISE PLLC
1 East Erie St., Suite 525-5203
Chicago, IL 60611
Email: zheng.gong@shinyrise.com
Phone: 312-612-0288

*Counsel for Defendant No. 1*
*Zhenjiangjianhongmaoyiyouxiangongsi*
*d/b/a COCKTAP*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system on the date below, which will send notification of such filing to all counsel of record.

Dated: September 15, 2026 *<u>/s/ Zheng Gong</u>*