**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FOSHAN HUAYUN TECHNOLOGY CO., LTD,<br>Plaintiff,<br>v.<br>SCHEDULE A DEFENDANTS,<br>Defendants. | Civil Action No. 2:26-cv-01521<br><br>Judge Christy Criswell Wiegand |

**DEFENDANTS' RESPONSE TO THE ORDER TO**
**SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Defendants TONGDA TECH (Def. No. 5), KOJOX SANITARY (Def. No. 8), IRIBER HOME (Def. No. 9), and DUSARO (Def. No. 14) (collectively, "the Joint Defendants") respectfully submit this Joint Opposition to Plaintiff's Motion for Preliminary Injunction and Response to the Order to Show Cause.

The Joint Defendants are legitimate, fully identified e-commerce businesses operating openly on Amazon.com. Relying solely on the public record, Plaintiff's own contradictory court filings, and objective prior art, the Court should deny Plaintiff's Motion for Preliminary Injunction, dissolve the Temporary Restraining Order and associated asset restraints, and permit discovery to proceed under standard federal rules.

## Legal Standard

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In patent actions, a party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375–76 (Fed. Cir. 2009).

To satisfy the first factor, the patentee must show that it will likely withstand the defendant's challenges to the validity and enforceability of the patent. *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997). If the alleged infringer raises a "substantial question" concerning patent validity or enforceability—meaning a defense that is not vulnerable to simple summary disposition—the burden shifts to the patentee to prove that the defense lacks substantial merit. *Titan Tire*, 566 F.3d at 1376. If the patentee fails to carry this burden, the court *must* deny the motion for a preliminary injunction. *Id.*

## Argument

### A. Plaintiff Cannot Establish a Likelihood of Success on the Merits.

#### 1. Contradictory Sworn Testimony Rebuts Plaintiff's Claimed Standing and Credibility

A threshold element for preliminary injunctive relief is a clear showing of ownership and standing. Plaintiff's evidentiary foundation is fatally flawed by shifting and contradictory sworn declarations submitted across Plaintiff's initial TRO Declaration, Dkt. 45, and Dkt. 57.

Plaintiff's sole declarant, Yunshi Deng ("Deng"), repeatedly executed false statements under penalty of perjury. In his initial declaration supporting the *ex parte* TRO motion, Deng swore he was "one of the inventors and owners" and declared that neither he nor Plaintiff had

ever licensed the patent-in-suit. In a subsequent declaration filed on September 15, 2026, Deng again swore under oath that he was "the inventor and owner" (Dkt. 45). Only on September 17, 2026—the morning of the Show Cause hearing—did Deng submit a third declaration admitting that his prior statements were false, claiming they were "inadvertent attorney drafting errors," and acknowledging that he holds no personal ownership interest whatsoever (Dkt. 57).

Deng further revealed that Plaintiff operates its Amazon business through an unpled Hong Kong affiliate, Yueshunweiyu Co., Limited (Dkt. 57). An applicant seeking extraordinary *ex parte* preliminary relief must present reliable, verified evidence. Plaintiff's submission of false affidavits defeats its burden of establishing standing and undermines the credibility of its entire factual record.

**2. The '101 Patent is Invalid as Obvious Over the *Rosen* Primary Reference and Prior Art**

Under 35 U.S.C. § 103, a design patent is invalid if the difference between the claimed design and the prior art would have been obvious to a designer of ordinary skill in the art. In evaluating design obviousness, courts apply the *In re Rosen* framework: there must be a single "primary reference" in the prior art with design characteristics that are substantially the same as the claimed design (Dkt. 44).

a. **Primary Reference (*Rosen* Reference):** EU Design Registration No. 006263299-0043 ("EU '0043") serves as a primary reference (Ex. A). EU '0043 creates an overall visual impression that is substantially identical to U.S. Design Patent No. D1,057,101 S ("the '101 Patent") (Ex. A; Ex. F). It discloses a rectangular faceplate featuring three circular, inline controls positioned directly above a single, centrally aligned rectangular handle (Ex. A) (*see* FIG. 1).



**US D1,057,101 S '101 Patent**
(Ex. F, FIG. 3)



**EU Design Registration**
No. 006263299-0043 (Ex. A)

*FIG. 1 — Claimed design of the '101 Patent (Ex. F, FIG. 3) compared with primary reference EU Design Registration No. 006263299-0043 (Ex. A). Both designs create substantially the same overall visual impression: a rectangular faceplate with three circular controls above a single rectangular handle.*

b. **Secondary References:** To the extent any minor ornamental variations exist between EU '0043 and the '101 Patent (Ex. F), those variations are well-documented throughout the crowded prior art field (Ex. B; Ex. C; Ex. D). Chinese Design Patent No. CN 304032638 S discloses the identical proportioned lower rectangular handle mounted on a concealed box plate (Ex. B), while CN 306922838 S and CN 306922841 S demonstrate standard push-button and rotary function controls on wall plates (Ex. C; Ex. D). CN 304032638 S was granted on 8 February 2017, and CN 306922838 S and CN 306922841 S were granted on 5 November 2021 (Exs. B–D) (*see* FIG. 2).










**CN 304032638 S, Ex. B** **CN 306922838 S, Ex. C** **CN 306922841 S, Ex. D**

*FIG. 2 — Secondary references disclosing standard bath-fixture components: a lower rectangular handle on a concealed box plate (CN 304032638 S, Ex. B) and wall plates with standard push-button and rotary function controls (CN 306922838 S and CN 306922841 S, Exs. C–D).*

When viewed from the perspective of an ordinary observer in light of the prior art, the overall design of the '101 Patent (Ex. F) represents an obvious combination of standard, off-the-shelf bath fixture components (Dkt. 44; Exs. A–F). Plaintiff fails to establish a likelihood of success on validity (Dkt. 44).

Moreover, the '101 Patent's own file history confirms the crowded nature of this field: the PTO examiner cited prior-art shower valve trims, including the Grohe Grohtherm Three Function Thermostatic Valve Trim (2016) and the Design House 594739 Karsen Valve Trim (2019), both of which disclose the same combination of a wall-mounted plate, push-button controls, and a lever handle (Ex. F).

**3. The '101 Patent is Invalid Under 35 U.S.C. § 102 via Objective Public Disclosure (Ex. E)**

A design patent is invalid under 35 U.S.C. § 102 if the claimed design was in public use, on sale, or otherwise available to the public before its effective filing date. The priority filing date of the '101 Patent (Ex. F) is October 21, 2024.

To defeat invalidity arguments, Plaintiff speculates that Amazon sellers execute “ASIN swaps” or “bait-and-switch” product revisions over time (Dkt. 44; Dkt. 45). Plaintiff’s speculation is directly refuted by **Exhibit E**, an objective public Amazon Vine Customer Review posted by reviewer “dontaj47” on **August 26, 2024**—nearly two full months *before* Plaintiff's patent application was filed. The reviewed product—the “Shower Faucet Set, 12″ Ceiling Mount” sold on Amazon by “Woindo” and rated 4.7 out of 5 stars from 215 global ratings—features the same ceiling-mounted, three-function push-button configuration (Ex. E).

As established in Exhibit E, the reviewer received and unboxed the matte black shower set in August 2024, uploading detailed photographs displaying the identical external ornamental configuration: a rectangular wall plate, three circular inline push-button controls, a rectangular lever, and associated mounting fixtures. Because design patents protect only external ornamental appearance rather than internal mechanical modifications (Dkt. 44), Exhibit E conclusively establishes that the claimed ornamental design was publicly disclosed, in public use, and distributed in the United States prior to October 21, 2024. The '101 Patent (Ex. F) is therefore invalid under 35 U.S.C. § 102. The side-by-side comparison at FIG. 3 confirms that the Joint Defendants’ accused products display the identical external ornamental configuration—the same configuration that was already publicly disclosed and in public use before the '101 Patent’s filing date (Ex. E).

| '101 Patent (Ex. F, FIG. 3) | Amazon "dontaj47" Review Aug. 26, 2024 (Ex. E) | Joint Defendants' Accused Product (Amazon Listing) |
|---|---|---|
|  |    |  Click to see full view |

*FIG. 3 — Three-way comparison of: (left) the claimed design of U.S. Design Patent No. D1,057,101 S (Ex. F, FIG. 3); (center) the identical design publicly disclosed in the Amazon "dontaj47" customer review posted August 26, 2024 (Ex. E)—nearly two months before the '101 Patent's October 21, 2024 filing date; and (right) a representative image of the Joint Defendants' accused three-function shower valve trim (Amazon product listing). All three display the same ornamental configuration: a rectangular faceplate with three inline circular push-button controls positioned above a centrally aligned rectangular lever.*

**4. The Claimed Design is Dictated by Function**

A design patent cannot protect visual features that are dictated by functional or utilitarian considerations. The overall configuration of the '101 Patent (Ex. F) is dictated by standard plumbing geometry:

- The rectangular wall plate is sized to cover standard concealed valve rough-in cutouts.
- The three circular inline controls correspond to push-button or rotary diverter valves for directing water between shower components.
- The lower long-arm rectangular lever is required to provide the mechanical leverage necessary to turn the internal ceramic mixing cartridge for temperature and flow control.
- The side openings are dictated by standard NPT/G-thread hot and cold water inlet connections.

Because the placement and general shape of these structural features are dictated by utilitarian plumbing needs, the '101 Patent (Ex. F) is invalid under 35 U.S.C. § 171.

**B. <u>Plaintiff Has Failed to Establish Irreparable Harm.</u>**

Irreparable harm cannot be presumed in patent cases. Plaintiff offers no concrete financial or market evidence demonstrating that money damages would be inadequate.

**Lack of Direct Market Nexus:** Plaintiff has not identified its own primary storefront or specific ASINs in its moving papers. Deng's recent declaration discloses that Plaintiff does not directly sell products on Amazon; instead, sales are conducted through an unpled Hong Kong

corporation, Yueshunweiyu Co., Limited (Dkt. 57). Plaintiff cannot claim direct, irreparable loss of customer goodwill for sales made by a separate corporate entity (Dkt. 57).

**Unreasonable Delay:** The '101 Patent (Ex. F) issued over eighteen months before Plaintiff initiated this action. Plaintiff's failure to act promptly refutes its assertion of emergency, irreparable harm.

### C. The Prejudgment Asset Freeze is Impermissible and Must Be Dissolved.

Under *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), district courts lack the inherent equitable authority to issue prejudgment asset freezes in actions seeking money damages.

Plaintiff's complaint seeks statutory and monetary damages for patent infringement under 35 U.S.C. § 284. A design patent claim does not create an equitable lien over a defendant's general bank accounts. Furthermore, Plaintiff failed to plead compliance with the patent marking requirements of 35 U.S.C. § 287(a). Having failed to show pre-suit notice or marking, Plaintiff cannot recover damages prior to the filing of the Complaint, making a freezing order covering all merchant funds disproportionate.

Finally, Plaintiff justified its *ex parte* asset freeze by arguing that overseas e-commerce merchants operating through corporate entities present an inherent “flight risk” (Schedule A). Yet Deng's own declaration confirms that Plaintiff operates its e-commerce business using the exact same structure—selling U.S. products through a Hong Kong entity (Dkt. 57). Joint Defendants are participating in this action to defend on the merits, and the asset freeze should be dissolved immediately.

**Conclusion**

Defendants IRIBER HOME, KOJOX SANITARY, DUSARO, and TONGDA TECH respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction, dissolve the Temporary Restraining Order and asset restraints, and order discovery to proceed under standard federal rules.

Date: September 23, 2026,

Respectfully submitted,
/s/ *He Cheng*

He Cheng (NYS Bar No. 5665617)
Palmer Law Group, P.A.
110 East Broward Blvd, Suite 1700
Fort Lauderdale, FL 33301
Tel: +1 (917) 525-1495
Email: rcheng@palmerlawgroup.com
***Attorney for Defendants***